25481. HUDGINS CONTRACTING CO. *v.* SMITH.

December 14, 1935.

*Carl T. Hudgins,* for plaintiff in error. *F. M. Bird,* contra.

BROYLES, C. J. John F. Smith brought suit against Hudgins Contracting Company for damages to an automobile, and obtained verdict and judgment. The bill of exceptions assigns error on the overruling of general and special grounds of demurrer to the original petition, on the overruling of the demurrer to the petition as amended, and on the overruling of the motion for new trial. The plaintiff in error insists that the petition failed to set out a cause of action, and therefore was not amendable. The petition

alleges, in substance, that petitioner, while operating an automobile in a *lawful* manner on Stewart Avenue in the City of Atlanta, Fulton County, struck a trailer drawn by a mechanical vehicle, on which trailer was loaded a ditching and shoveling machine sometimes called an excavator, and being operated and transported by defendant on said street; that the trailer was about one foot in heighth; that the trailer and load thereon were large in size and weighed approximately fifteen tons; that Stewart Avenue is a public street; that "at the time and place of said collision it was before daylight, and dark, and there was a heavy rain falling, so that conditions of visibility were such as to render it impossible to see a conveyance, such as the one the defendant was operating at the time and place as aforesaid, without some light or other signal being on same; that at said time and place defendant was operating and transporting said vehicle, trailer, and load, *without any light on the rear, and without any form or type of warning or signal* [italics ours] which would put the operator of an automobile approaching from the rear on notice of the presence of said conveyance in the street ahead of said automobile," that "as a result of the defendant's failure to provide some signal or other warning to the operator of said automobile, this petitioner was injured;" that defendant was negligent in operating and transporting the loaded trailer without a light or other warning to other persons using the street, in so operating the vehicle in conditions of poor visibility without proper warning of its presence, in operating and transporting said vehicle in violation of the ordinances of the city, and in operating and transporting said vehicle in violation of the laws of the State; that, "as a result of the defendant's negligence as aforesaid, petitioner's car collided with the said vehicle, trailer, and load operated as aforesaid by defendant, and so great was the impact that the light automobile, in striking the almost immovable vehicle and load operated as aforesaid by defendant, was demolished and rendered practically useless;" that the value of petitioner's automobile is at least $500 less than its value before said wreck. If, admitting all the allegations of the petition to be true, no cause of action is set out, then of course the petition would be subject to general demurrer; but the defendant can not admit that it was operating a 15-ton vehicle, without lights, signal, or warning, on a thoroughfare in a city, on a dark

night, while a heavy rain was falling, in violation of city ordinances, and in violation of the State law, and that such operation resulted in damage to an automobile which was being operated in a lawful manner, and escape liability.

The law is liberal with reference to the allowance of amendments. Necessary allegations, clothed in the most apt and expressive language, are often termed "conclusions of the pleader," when they are not such conclusions in legal contemplation. But even so, such conclusions may be substantiated by allegations of fact. It is not necessary for a plaintiff to plead his evidence; and "except in cases of railroad employees injured by the negligence of fellow servants and suing under our statutes governing that subject, contributory negligence is an affirmative defense, and it is generally not necessary for the plaintiff to negative its existence in his petition." *Great Cosmopolitan Shows* v. *Petty, 7 Ga. App.* 236 (66 S. E. 624). The facts alleged in the instant case are similar in principle to those in *Gay* v. *Smith,* 51 *Ga. App.* 615 (181 S. E. 129), where it was held: "A petition alleging that the plaintiff's son was in an automobile being driven by another, . . on . . a dark and foggy morning, . . over a public highway, that it ran into a gondola car which formed a part of a freight-train standing across and blocking the highway, . . that the fog was dense and heavy at this point, which prevented the driver of the automobile from seeing the railroad-car across the highway, that neither the driver nor other occupants of the automobile knew of the railroad crossing at this point, that there was no light, no flagman waving a lantern, or other signal or warning to people traveling the highway, of the presence of the train across the highway, that the gondola car and the pavement of the highway were of a similar color and damp with the mist, and this, with the foggy and dense atmosphere and the darkness, rendered the train car very much the same color of the pavement on the highway and very difficult to see, and that as a result thereof the driver of the automobile using due care and caution in the premises and proceeding at an orderly rate of speed, about 30 miles an hour, plaintiff's son was instantly killed when the automobile collided with the standing freight-car, set up a cause of action, and the judge did not err in overruling the general demurrer. [Citing authorities.] 'Every case of this sort must, in

the last analysis, be determined upon its own facts, and we think the instant petition was not fatally defective as failing to state a cause of action. It sufficiently avers negligence on the part of the defendant, and does not as a matter of law disclose such negligence or want of care on the part of the decedent as to bar a recovery. The defendant, of course, had the right to use its tracks at this crossing, and would not be guilty of negligence in the *mere act* of stopping its cars for such length of time as might be reasonably necessary in the conduct of its business, but it still should comply with any valid municipal ordinances or other lawful regulations enacted for the public safety; and *regardless of prescribed regulations, it might be true that in particular circumstances [such as a misty and foggy morning] due care for the safety of travelers would require the placing of a guard, light, or other warning at a proper point for the purpose of giving notice for the time being that the street was obstructed.'* Mann v. Central of Ga. Ry. Co., 43 Ga. App. 708 (160 S. E. 131).'' (Italics ours.) The petition in the instant case alleged that this fifteen-ton vehicle was being transported, under the alleged conditions as to visibility, "without any form or type of warning or signal" which would put an approaching automobile on notice of its presence. The petition alleged parties plaintiff and defendant, negligence of the defendant, and a dereliction of duty by the defendant which resulted in damage to the plaintiff. The court properly overruled the general demurrer.

In order to meet the special demurrers to the petition, which were sustained, the plaintiff set out certain city ordinances relative to vehicles being operated "in disregard of the rights or safety of others," "slowly moving or heavily-laden vehicles" blocking "the normal and reasonable movement of traffic," requiring "two lights facing front and a light showing red in the rear," parking vehicles on the street at night without a light, interfering with or interrupting "the passage of other vehcles;" and the State law requiring vehicles using the highways at night to be equipped with "lamps clearly visible for a distance of not less than 100 feet from the front and rear," and requiring tractors and trailers to "have on the rear thereof one lamp capable of displaying a red light visible for a distance of at least 100 feet behind such vehicle." The plaintiff alleged that the defendant was violating said laws

and ordinances; and alleged that he (plaintiff) "in operating his said automobile was in the exercise of care required in the situation, in that he maintained a sharp lookout and operated his car at a speed less than 25 miles an hour; the lights were in good working order and were turned on;" and that "the failure of the defendant to comply with the law requiring him to operate his automobile with lights or other appropriate signal or warning of the presence of defendant's vehicle upon the said highway is the sole cause of the collision of the petitioner's car and the vehicle owned and operated, as set out in said petition, by defendant or its agents." The demurrer to the petition as amended was properly overruled.

The evidence as to the extent of damage to the car was conflicting, as was the evidence as to negligence of the plaintiff and the defendant. The plaintiff testified that the defendant's trailer with steam shovel thereon was bigger than a street-car; that it was painted yellow and could not be seen on the dark rainy night; that "there wasn't any one behind it with any lights, and there were not any lights on it;" that it was "in the middle of the street;" that it was dark, rainy, and foggy, and "for that reason I was not going fast;" that he "was going between 20 and 25 miles an hour;" and that his car was properly equipped with two windshield wipers in operation, with lights which were burning, and with hydraulic brakes. The operator of the defendant company testified that he was standing about 40 feet behind the trailer, with a red lantern which was lighted and which he waved, and that there was also a lantern near the top of the cab; that the plaintiff was "*possibly* running 30 to 35 miles per hour when he passed me;" and that the trailer was parked on the right-hand side of the street. A radio policeman testified that he received a call to go to the scene of the collision; that he did not "see any lights on the rear of the steam shovel at all. I looked for a light; that was one of the first things we looked for, and I didn't see any light, and about that time some one came up the street with a lantern and hung it on the steam shovel." The ordinances relative to reckless driving, slow moving, and heavily-laden vehicles, and those in reference to lights being required in front and rear of vehicles, were introduced. Under the conflicting evidence, the questions of the defendant's negligence, the plaintiff's negligence,

whose negligence caused the damage, and whether the plaintiff by the exercise of ordinary care could have avoided the injury to his car, were all questions of fact for the jury; and this court can not invade the province of the jury. "This court has no power to determine that the preponderance of the evidence is in favor of one party to a cause rather than the other, or to award a new trial in any case where there is any evidence sufficient to support the verdict rendered." *Bunn* v. *Hargraves, 3 Ga. App.* 518(4) (60 S. E. 223). The condition of visibility which made it obligatory upon the plaintiff to proceed with caution for his own safety also made it obligatory upon the defendant not to put a heavy obstacle, practically invisible under the circumstances and as large as a streetcar, on the street of a city, and in violation of State and municipal laws, without warning approaching vehicles of its presence. The evidence as to the proximate cause of the injury being conflicting, the jury's finding on the issues of fact can not be disturbed.

The only special ground of the motion for new trial is as follows: The plaintiff was being questioned by his attorney concerning the length of time his damaged car had remained in the garage after the wreck, and why it had not been repaired; and counsel asked: "Why wasn't anything done about it? A. I was trying to get a settlement out of him or the insurance company. I wanted them to see what bad shape it was in, before they did anything about it. . . Counsel for the defendant moved for a mistrial upon the ground that statement made by the plaintiff was prejudicial to the defendant, and that no insurance company was defending the case. The court stated to the jury that he would not feel justified in granting a mistrial, but did instruct the jury to disregard the statement with reference to insurance or to the insurance company, and directed the jury to remove that from their minds. . . At no time and in no other way, during the progress of the trial, was the matter of insurance brought to the attention of the court or the jury." Counsel for the defendant in his brief says: "It seems that counsel for plaintiff was expecting the witness to answer as he did answer, and purposely put the question for the very purpose of injecting that fact into the case." Counsel for the plaintiff insists that he had no such idea, and that such inference was not justified, "as counsel for the defendant in

error did not anticipate such answer, and stated his regret to the court. The answer that was anticipated would have been to the effect that the car was not worth fixing." It is entirely reasonable that the plaintiff's counsel expected this answer, because his object, as shown by the allegations of the petition and his examination of witnesses, was to show that plaintiff's car was "demolished and rendered practically useless," and therefore that the plaintiff was damaged in a substantial amount, as alleged. The strongest case we find that would inure to the benefit of the plaintiff in error in this regard is *Decatur Chevrolet Co.* v. *White,* 51 *Ga. App.* 362 (180 S. E. 377), where it was held that the error "was not cured by merely ruling that the testimony was inadmissible;" and the opinion shows that the court "ruled merely that the evidence was inadmissible, . . and did not give the jury any instructions about disabusing their minds of any prejudice, . . and the mere ruling out of the evidence . . *without instructions to the jury to disregard it,* was not sufficient to erase the prejudicial statement from the minds of the jury." The natural and reasonable construction of that ruling, and the natural inference and implication therefrom, are that proper instructions from the court would have rendered the error harmless. It has often been contended that improper evidence can not be erased from the minds of the jury by instructions from the court; but the Supreme Court and this court, recognizing the difficulty of trying a case without any errors, in the interest of justice and economy have repeatedly held that various prejudicial statements were not cause for a new trial in view of the instructions of the trial court. In the instant case the court "did instruct the jury to disregard the statement with reference to insurance or to the insurance company, and directed the jury to remove that from their minds." Moreover, the jury heard the positive and undisputed statement of the defendant's counsel "that no insurance company was defending the case," which naturally would offset or refute any impression made by the mere reference to an insurance company by the plaintiff. The ground does not show that the jury were sent out while the motion to declare a mistrial was being made; but on the contrary it shows that the jury knew about the motion, as it appears that the motion was made "promptly upon said question being asked and answered by the plaintiff;"

694

and "the court stated *to the jury* that he would not feel justified in granting a mistrial." The jury, being present, necessarily heard counsel's statement that "no insurance company was defending the case." This ground shows no cause for another trial of the case. The evidence authorizing the verdict, and no reversible error of law being shown, the judgment is

*Affirmed. MacIntyre and Guerry, JJ., concur.*